# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES JAZINA, JR.,<br>    *Plaintiff*,<br><br>v.<br><br>NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br>    *Defendant*. | No. 3:16-CV-01470 (JAM) |

## RULING ON CROSS MOTIONS TO REMAND AND AFFIRM DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

Plaintiff James Jazina, Jr. asserts that he is disabled and unable to work, due primarily to chronic neck and back pain. He has brought this action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant Commissioner of Social Security, who denied plaintiff's claim for supplemental security income. For the reasons explained below, I will grant plaintiff's motion to remand the decision of the Commissioner (Doc. #15), and deny defendant's motion to affirm the decision of the Commissioner (Doc. #18).

### BACKGROUND

The Court refers to the transcripts provided by the Commissioner. *See* Doc. #13-1 through Doc. #13-11. Plaintiff filed an application for supplemental security income on March 24, 2014, alleging disability beginning August 29, 2013. Plaintiff was 52 years old at the time of his application. He previously worked as a computer technician and mechanic but has not worked since being laid off in 2008. Plaintiff filed a prior application for disability insurance benefits and supplemental security income in July 2011, alleging disability since January 2009, but was found not disabled by an administrative law judge in 2013. Doc. #13-4 at 5–20.

Plaintiff's current claim for supplemental security income was denied initially and upon reconsideration. Plaintiff then appeared and testified at a hearing before Administrative Law Judge (ALJ) Louis Bonsangue on November 4, 2015. Plaintiff was represented before the ALJ by both an attorney and a non-attorney representative. A vocational expert also testified at the hearing. On March 30, 2016, the ALJ issued a decision holding that plaintiff was not disabled within the meaning of the Social Security Act. Doc. #13-3 at 24–33. After the Appeals Council denied plaintiff's request for review, plaintiff filed this federal action.

To qualify as disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant] [is] able to meet with [his] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(a)–(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

To evaluate a claimant's disability, and to determine whether he qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits [his] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [he] has the residual functional capacity to perform [his] past work. Finally, if the claimant is unable to perform [his] past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122–23 (2d Cir. 2012) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)-(v). In applying this framework, an ALJ can find a claimant to be disabled or not disabled at a particular step and can make a decision without proceeding to the next step. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving the case at steps one through four; at step five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The ALJ here concluded that plaintiff was not disabled within the meaning of the Social Security Act. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since March 24, 2014. Doc. #13-3 at 26. At step two, the ALJ found that plaintiff suffered from one severe impairment: degenerative disc disease of the cervical and lumbar spines. *Ibid*. The ALJ determined a number of plaintiff's other conditions to be non-severe impairments, including plaintiff's left eye cataract, history of traumatic brain injury, right shoulder pain, and right hearing loss. *Id*. at 27.

3

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Ibid*. The ALJ considered listing 1.04 (spine disorders) in particular and concluded that plaintiff's impairment did not satisfy the criteria of this listing. *Ibid*.

At step four, the ALJ found that plaintiff had "the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b)," but with the following additional limitations: plaintiff "can occasionally climb ramps and stairs, but he can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He can occasionally finger bilaterally, and he can occasionally reach bilaterally." *Id*. at 28. In formulating this residual functional capacity (RFC), the ALJ gave "significant weight" to the assessments of two state agency medical consultants, while giving only "partial weight" to the opinions of plaintiff's treating physiatrist and treating primary care physician. *Id*. at 30–31.

The ALJ also found plaintiff's testimony about his symptoms to be only partially credible. Specifically, the ALJ found that while plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the evidence . . . ." *Id*. at 28. Also at step four, the ALJ concluded that plaintiff could not perform any of his past relevant work. *Id*. at 31.

At step five, after considering plaintiff's age, education, work experience, and RFC, the ALJ concluded that jobs that plaintiff can perform exist in significant numbers in the national economy. This finding relied on the testimony of vocational expert Renee Jubrey, who testified at the administrative hearing that an individual with plaintiff's RFC and limitations (as

determined by the ALJ) could perform the requirements of representative occupations such as school bus monitor, counter clerk, and usher. The ALJ ultimately concluded that plaintiff was not disabled within the meaning of the Social Security Act. *Id*. at 32.

The Appeals Council denied plaintiff's request for review on June 30, 2016. Plaintiff subsequently filed this federal action in August 2016, asking the Court to reverse the Commissioner's decision or remand the case for rehearing. In response, defendant moved to affirm the Commissioner's decision.

## DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, this Court must uphold the Commissioner's decision if it is supported by substantial evidence and even if this Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

Plaintiff argues that the ALJ erred in two respects, both of which impacted the ALJ's step-four determination of plaintiff's RFC and limitations. First, plaintiff argues that the ALJ violated the treating physician rule when he assigned only partial weight to the opinions of plaintiff's treating physicians and instead relied on the opinions of the state agency medical consultants. Doc. #16 at 2–8. Second, plaintiff argues that the ALJ erred in its adverse credibility finding with regard to plaintiff's statements about his symptoms. *Id*. at 8–12.

5

*Violation of Treating Physician Rule*

Plaintiff's first objection is that the ALJ erred in assigning only partial weight to the opinions of plaintiff's treating physicians, Dr. Riordan and Dr. Ott, and instead deferring to the opinions of the state agency medical consultants, who neither treated nor examined plaintiff. Plaintiff focused exclusively on this objection during oral argument before the Court. Plaintiff contends that the ALJ's weighing of the medical opinion evidence violated the treating physician rule, was not supported by substantial evidence, and warrants remand.

The law is clear that the Commissioner must apply the "treating physician rule" when considering "the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 416.927(d)(2). According to the treating physician rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess*, 537 F.3d at 128. Even if a treating physician's opinion is not given controlling weight, the ALJ must consider a number of factors to determine the proper weight to assign, including "the [l]ength of the treatment relationship and the frequency of examination; the [n]ature and extent of the treatment relationship; the relevant evidence . . ., particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Id*. at 129 (internal quotation marks and citations omitted) (alterations in original). After considering these factors, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion. . . . Failure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id*. at 129–30; *see also* 20 C.F.R. § 416.927 ("We

will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

Here, the ALJ gave only partial weight to the opinions of plaintiff's treating physicians, Dr. Riordan and Dr. Ott, accepting some of the limitations indicated by the treating physicians, but explicitly rejecting their opinions as to plaintiff's ability to stand, walk, and sit, and as to plaintiff's overall capacity. The ALJ chose instead to assign controlling weight to the opinions of the state agency medical consultants. Below, I will briefly summarize the record evidence related to the opinions of Dr. Riordan, Dr. Ott, and the state agency medical consultants, before analyzing the ALJ's weighing of such evidence.

The record in this case contains extensive treatment notes documenting plaintiff's monthly visits to Dr. Riordan, a physiatrist, between 2012 and 2015. These notes reflect plaintiff's fairly consistent reports of pain in his neck and back, Dr. Riordan's attempts to treat the pain with various prescription medications, and the results of tests including x-rays and MRIs. *See* Doc. #13-10 at 2–86. Dr. Riordan also filled out spinal impairment questionnaires in July 2015 and November 2015. *See* Doc. #13-11 at 47–52, 83–93. Dr. Riordan diagnosed plaintiff with traumatic brain injury, lumbar disc degeneration, cervical radiculopathy, and peripheral neuropathy, citing the two MRIs from 2015 and an electromyogram (EMG) from 2011 in support of his diagnoses. Dr. Riordan's responses on the questionnaires indicated significant work-related limitations, including plaintiff's inability to sit or stand/walk for more than one hour at a time, plaintiff's need for frequent and unscheduled breaks, the fact that plaintiff's experience of pain, fatigue, or other symptoms would "frequently" interfere with attention and concentration, and the fact that plaintiff was likely to be absent more than three times a month, among other limitations. In a letter submitted along with the second

7

questionnaire, Dr. Riordan asserted in no uncertain terms that plaintiff "is disabled from competitive employment. He has been disabled for over 2 years and I expect he will remain so for many years to come." *Id*. at 83.

The record also contains treatment notes documenting plaintiff's visits to Dr. Ott, his primary care physician, between 2012 and 2014. *See* Doc. #13-9 at 54–133. These records focus largely on plaintiff's back and neck pain. Dr. Ott filled out a spinal impairment questionnaire in March 2015. He listed plaintiff's diagnoses as cervical degenerative joint disease, cervical neuritis, and lumbar degenerative joint disease. He assessed that plaintiff could not sit or stand/walk for more than three hours at a time, that plaintiff would need to take unscheduled breaks to rest about every ten to fifteen minutes, and that plaintiff was likely to be absent from work more than three times per month, among other limitations. Doc. #13-10 at 115–20.

The record contains assessments from two state agency medical consultants, Dr. Lorenzo and Dr. Rittner. *See* Doc. #13-4 at 34–53. In contrast to plaintiff's treating physicians, both consultants found that plaintiff was capable of performing light work and that he could sit and stand/walk for up to six hours at a time, among other findings. Dr. Lorenzo's assessment was completed on May 13, 2014, and Dr. Rittner's assessment was completed on September 12, 2014. The state agency medical consultants based their assessments solely on a review of plaintiff's treatment records available at the time. Neither of the consultants' assessments took into consideration any evidence from 2015, as this evidence postdated the assessments. For example, the consultants did not consider the treating physicians' source opinions, nor the MRI results. Indeed, the consultants' assessments explicitly acknowledge that they did not have access to opinions from any treating or examining sources. *See* Doc. #13-4 at 39 ("There is no

8

indication that there is opinion evidence from any source."); *id*. at 49 ("There is no indication that there is medical or other opinion evidence").

The ALJ erred in several respects in weighing the medical opinion evidence in this case. First, it is not clear that the ALJ was justified in deciding not to assign controlling weight to the treating physicians' opinions. The ALJ did not separate his reasons for declining to assign controlling weight from his reasons for assigning partial weight, but a fair reading of the ALJ's decision suggests that he declined to assign controlling weight because he found the treating physicians' opinions to be inconsistent with other evidence in the record. For reasons I will explain below, I am not persuaded by these alleged inconsistencies. Therefore, the failure to assign controlling weight in the absence of legitimate inconsistencies between the opinions and the record likely could itself provide grounds for remand.

But even assuming the ALJ was justified in not assigning controlling weight to the opinions of plaintiff's treating physicians, the ALJ was still required to consider the regulatory factors, *see* 20 C.F.R. 416.927(c), and then to set forth good reasons for the weight assigned. Here, the ALJ did not expressly address the factors required to determine the proper weight to assign to a treating physician's opinion. Beyond the ALJ's conclusory statement that "I have also considered opinion evidence in accordance with the requirements of 20 CFR 16.927 and SSRs 96-2p, 96-5p and 06-3p," there is no indication in the opinion that the ALJ in fact considered the requisite factors. The ALJ simply acknowledged the existence of a "treating relationship" between plaintiff and his treating physicians, but does not appear to have considered, for example, the length of the treatment relationship, frequency of examination, the nature and extent of the treatment relationship, or the level of specialization, with respect to either of the treating physicians. The Second Circuit has held that "in order to override the opinion of the

9

treating physician," the ALJ must "explicitly consider" such factors. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).

Nor am I able to conclude that the ALJ gave "good reasons" for its weighing of the medical opinion evidence. The ALJ chose not to credit Dr. Riordan's opinion that plaintiff was unable to sit, stand, or walk for more than one hour, and instead credited the state agency medical consultants' assessment that plaintiff could sit, stand, or walk for up to six hours. The ALJ offered several specific reasons for assigning only partial weight to Dr. Riordan's opinion: (1) plaintiff's "admission that he can sit without pain," (2) "the findings of no significant loss of gait," (3) "the conservative treatment course," and (4) plaintiff's "admi[ssion] to being able to do activities such as shoveling snow . . . that require significant exertion." Doc. #13-3 at 30. With the exception of the findings of no significant loss of gait, none of these reasons constitute legitimate reasons sufficient to discredit the opinion of a treating physician, given the record in this case.

First, it is unreasonable to characterize the record as containing an "admission" by plaintiff that he can sit without pain. The ALJ extrapolated this admission from Dr. Ott's treatment notes, which indicate the following with respect to plaintiff's neck pain: "The patient describes the pain as dull, aching, shooting, and throbbing. . . . The pain is constant. Pain exacerbations occur daily. . . . Exacerbating factors: neck movement, arm movement, standing, walking and computer use, but not exacerbated by sitting and not exacerbated by use of bifocal glasses." Doc. #13-11 at 63. As plaintiff points out, this statement is specific to plaintiff's neck pain and does not address whether plaintiff's back pain is exacerbated by sitting. Doc. #16 at 5–6. Thus, the statement does not undermine Dr. Riordan's opinion about plaintiff's ability to sit

(nor, of course, does it undermine Dr. Riordan's opinion about plaintiff's ability to stand or walk).

Second, the ALJ contended that plaintiff's "conservative" course of treatment contradicts Dr. Riordan's assessment of plaintiff's abilities. As an initial matter, the Second Circuit has cautioned against discounting the opinion of a treating physician merely because the physician recommended a conservative treatment regimen. See *Burgess*, 537 F.3d at 129.

Moreover, I am not persuaded that the ALJ was justified in characterizing plaintiff's treatment as conservative in the first place. The ALJ stated that plaintiff's "treatment was largely conservative and focused on pain management," and that "[t]here is no record of surgery, physical therapy, or other treatment." Doc. #13-3 at 29. But this characterization of plaintiff's treatment history is not consistent with the record. A letter from Dr. Riordan dated November 3, 2015, specifically noted that plaintiff "has been treated with physical therapy, injections and multiple medication trials. Currently he uses methocarbamol 750 mg and Percocet for pain." Doc. #13-11 at 83. In addition, "the ALJ has pointed to nothing in the record to suggest that Plaintiff was an eligible candidate for more aggressive medical treatment, such as surgery, [which] calls into question the ALJ's characterization of Plaintiff's treatment as 'conservative.'" *Hamm v. Colvin*, 2017 WL 1322203, at *25 (S.D.N.Y. 2017).

Finally, plaintiff's treatment regimen—which included powerful prescription opioids like oxycodone as well as other prescription drugs, and in the past included physical therapy and injections—does not appear to qualify as conservative even under the cases cited by defendant. See, e.g., *Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) ("conservative treatment" regimen consisted of walking, home exercise programs, and gentle stretching); *Burgess*, 537 F.3d at 129 ("conservative treatment" involving "only over-the-counter medicine").

The ALJ also noted that plaintiff has "admitted to being able to do activities such as shoveling snow . . . that require significant exertion" as an additional reason for rejecting Dr. Riordan's opinion. Doc. #13-3 at 30. This "admission" came from Dr. Riordan's treatment note from March 4, 2015, which indicated that plaintiff's "neck and back are worse with having to shovel snow." Doc. #13-11 at 26. The note does not indicate the circumstances under which plaintiff attempted to shovel snow, or whether he attempted to do so more than once. The note hardly suggests that plaintiff was "able" to shovel snow, given that it worsened his pain. And though the ALJ referenced "activities" in the plural, he did not offer (nor does the record contain) examples of any other activities requiring significant exertion in which plaintiff was able to engage.

Having found lacking three of the ALJ's four reasons for assigning only partial weight to Dr. Riordan's opinion, I cannot conclude that the ALJ has provided "good reasons" for this decision, nor do I find that this decision is supported by substantial evidence.

The ALJ also assigned only partial weight to Dr. Ott's opinion, though the ALJ's reasons for doing so were largely vague and non-specific. *See* Doc. #13-3 at 31 (stating that "much of [Dr. Ott's] assessment is unsupported," "[t]he evidence provides stronger support for the light exertional capacity assessed by the state agency consultants as explained above," and "[t]here is no finding of significant gait loss, or even positive straight leg raises."). To the extent that the ALJ intended to incorporate the same reasons given for assigning only partial weight to Dr. Riordan's opinion, those reasons similarly fail with respect to Dr. Ott. I therefore find that the ALJ's decision to assign only partial weight to Dr. Ott's opinion is not supported by substantial evidence.

Not only did the ALJ err in weighing of the treating physicians' opinions, but the ALJ also erred in allowing the opinions of the state agency medical consultants to override the opinions of the treating physicians. While it is true that "[t]he opinions of non-examining sources may . . . override [a] treating source's opinions provided they are supported by evidence of record," *see Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995), it is clear that the state agency medical consultants here did not have access to the complete record. Most importantly, they did not review the source opinions from Dr. Riordan and Dr. Ott. In *Tarsia v. Astrue*, 418 F. App'x 16, 18 (2d Cir. 2011), the Second Circuit ordered remand where an ALJ relied on a state agency medical consultant's opinion instead of a treating physician's opinion, because it was not clear whether the state agency medical consultant had reviewed all of the relevant medical information, including the treating physician's functional capacity assessment. *See id.* ("Because it is unclear whether [the state agency medical consultant] reviewed all of [plaintiff's] relevant medical information, his opinion is not "supported by evidence of record" as required to override the opinion of [plaintiff's] treating physician"); *see also* 20 C.F.R. § 416.927 (noting that, "because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions. We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources.").

The ALJ did not acknowledge that the state agency medical consultants failed to review the full record, including the opinions of Dr. Riordan and Dr. Ott. Rather, the ALJ incorrectly asserted that the state agency medical consultants "based their findings on a thorough review of the record." Doc. #13-3 at 30. The ALJ erred in assigning significant weight to the state agency

13

medical consultants' under-informed opinions and in allowing their opinions to override those of plaintiff's treating physicians. *See Tarsia*, 418 F. App'x at 18 ("the ALJ erred in placing substantial weight on [the state agency medical examiner's] possibly ill-founded opinion and in allowing [his] opinion to override that of [plaintiff's treating physician]").

For all of the reasons above, I agree with plaintiff that the ALJ misapplied the treating physician rule, that the ALJ's weighing of the medical opinion evidence is not supported by substantial evidence, and that remand is warranted. On remand, the ALJ should reconsider the weight that should be assigned to Dr. Riordan's and Dr. Ott's opinions, and should explain reasons for the weight assigned. The ALJ may also decide to request an updated assessment from a state agency medical consultant, after the consultant has the opportunity to review all of the information in the record, including the treating physicians' opinions.

### *Adverse Credibility Finding*

Plaintiff also contends that the ALJ erred in assessing his credibility with respect to his symptoms. Doc. #16 at 8–12. The ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. Doc. #13-3 at 28. The ALJ, however, found that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the evidence," and thus found these statements to be only partially credible. *Ibid*.

If supported by objective medical evidence, a claimant's subjective report of pain is entitled to great weight. *See Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992). But if a claimant's subjective evidence of pain suggests a greater severity of impairment than can be demonstrated by objective evidence alone, the ALJ must consider other evidence, such as the claimant's daily activities, duration and frequency of pain, medication, and treatment. *See* 20

14

C.F.R. § 416.929(c)(3). When determining a claimant's RFC, "the ALJ is required to take the claimant's reports of pain and other limitations into account but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). When supported by specific reasons, "an ALJ's credibility determination is generally entitled to deference on appeal." *Selian*, 708 F.3d at 420.

The ALJ offered several reasons for his adverse credibility finding. Plaintiff argues that three of the ALJ's reasons were invalid, and I am inclined to agree. First, the ALJ noted that plaintiff made a prior claim of disability, was found not disabled, and filed the present claim for disability immediately afterwards. Doc. #13-3 at 28–29. Neither the ALJ nor defendant has offered a persuasive explanation for how this fact is logically or legally relevant to plaintiff's credibility with respect to his symptoms for purposes of the present claim.

Second, the ALJ again relied on plaintiff's "conservative" course of treatment. As I explained above, I do not agree that plaintiff's treatment qualifies as conservative under relevant case law; nor do I agree that plaintiff's treatment history detracts from plaintiff's credibility with respect to the severity of his symptoms, especially given the lack of any evidence suggesting that plaintiff was a candidate for more aggressive treatment. *See Hamm*, 2017 WL 1322203, at *24–25.

Third, the ALJ noted that "nonmedical observations of the claimant do not strongly support the allegations," because "when [plaintiff] visited the field office interviewer, he had no difficulty sitting, standing, walking, using hands, or performing mental tasks." Doc. #13-3 at 30 (citing Doc. #13-7 at 3). While the ALJ may properly consider any observations about a claimant recorded by Social Security Administration employees during interviews, *see* SSR 96-7p; 20

15

C.F.R. 416.929(c)(3), the observations cited here appear to me irrelevant, or at least insufficient to constitute substantial evidence to support the ALJ's credibility finding. There is no evidence of the length of the field office interview, and plaintiff has not claimed to be unable to stand, sit, or walk for short periods of time. Thus, the field office interviewer's observations do not support the ALJ's adverse credibility finding. *See Sevier v. Berryhill*, 2017 WL 466546, at *5 (C.D. Cal. 2017).

In addition to the flawed reasons above, the ALJ also cited additional, permissible reasons for the adverse credibility finding: treatment notes indicating that plaintiff's symptoms responded to medication, as well as the results of various physical examinations. It is not clear to me that these reasons on their own, however, constitute substantial evidence to support the ALJ's adverse credibility finding. Although "an ALJ's credibility finding should stand even if he makes some errors in that analysis," such a finding should not stand where the errors "significantly detract from the ALJ's overall credibility analysis." *Wong v. Astrue*, 2013 WL 869384, at *1 (D. Conn. 2013) (citing *Jones v. Astrue*, 2011 WL 322821, at *8 (D. Conn. 2011)). It is also plausible that the ALJ's credibility finding might have been different had the ALJ properly applied the treating physician rule.

Because I have already found that a step-four remand is required on the basis of the ALJ's misapplication of the treating physician rule, I need not decide whether any errors made by the ALJ in assessing plaintiff's credibility warrant remand. But given the concerns I have expressed above, the ALJ should revisit his credibility finding on remand. The ALJ should consider whether his assessment of plaintiff's credibility is impacted by the re-weighing of the medical opinion evidence and/or by the concerns expressed in this opinion as to several of the ALJ's given reasons.

## CONCLUSION

Plaintiff's motion to remand the Commissioner's decision (Doc. #15) is GRANTED. Defendant's motion to affirm the Commissioner's decision (Doc. #18) is DENIED. On remand, the ALJ shall reconsider all medical opinion evidence in accordance with the treating physician rule, and if appropriate, shall also reconsider plaintiff's credibility in light of the concerns identified in this opinion.

It is so ordered.

Dated at New Haven, Connecticut, this 13th day of December 2017.

    /s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge